IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCON INC., TRUEVISION SYSTEMS, INC. and ALCON PHARMACEUTICALS LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 21-1804 (CFC) |
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Gabriel K. Bell
Ashley M. Fry
Kelley M. Storey
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
(202) 637-2200

Roger J. Chin
Gabriel S. Gross
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 491-0600

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants
AMO Development, LLC,
AMO Manufacturing USA, LLC,
AMO Sales and Service, Inc. and
Johnson & Johnson Surgical Vision, Inc.*

Jacob T. Whitt
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

February 18, 2022

# **TABLE OF CONTENTS**

**Page**

I.  NATURE AND STAGE OF THE PROCEEDINGS ....................................... 1

II.  SUMMARY OF ARGUMENT ................................................................. 1

III.  STATEMENT OF FACTS ...................................................................... 3

    A.  The Asserted Patents' Written Descriptions ..................................... 3

    B.  The Patent Claims ....................................................................... 5

IV.  LEGAL STANDARDS ........................................................................... 8

    A.  Motions To Dismiss Under Rule 12(b)(6) ......................................... 8

    B.  Patent Eligibility Under 35 U.S.C. § 101 .......................................... 8

V.  ARGUMENT .......................................................................................... 9

    A.  *Alice* Step One: The Claims Are Directed To The Abstract Idea
Of Collecting, Analyzing, And Displaying Information ...................... 9

        1.  The Representative Claims Are Directed To The Abstract
Idea ...................................................................................... 10

        2.  The Other Claims Are Directed To The Same Abstract
Idea ...................................................................................... 16

    B.  *Alice* Step Two: The Claims Add Nothing Inventive ....................... 19

        1.  The Representative Claims Add Nothing Inventive ................ 20

        2.  The Other Claims Add Nothing Inventive .............................. 21

    C.  The Claims Should Be Found Ineligible On The Pleadings .............. 22

VI.  CONCLUSION ..................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)..............................................................................23

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) .................................................................................. *passim*

*Align Technology, Inc. v. 3Shape A/S*,
  339 F. Supp. 3d 435 (D. Del. 2018).................................................... 3, 12, 13, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................8

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility, LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)..............................................................................21

*Boom! Payments, Inc. v. Stripe, Inc.*,
  839 F. App'x 528 (Fed. Cir. 2021) ...............................................................18

*BSG Tech. LLC v. BuySeasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)..............................................................................19

*Burnett v. Panasonic Corp.*,
  741 F. App'x 777 (Fed. Cir. 2018) ...............................................................18

*CardioNet, LLC v. InfoBionic, Inc.*,
  2021 WL 5024388 (Fed. Cir. Oct. 29, 2021)................................................. 11, 14

*CardioNet, LLC v. InfoBionic, Inc.*,
  816 F. App'x 471 (Fed. Cir. 2020) ......................................................... *passim*

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019)..............................................................................23

*Chamberlain Grp. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019)..............................................................................19

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)..............................................................................19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
   776 F.3d 1343 (Fed. Cir. 2014).................................................................. 16, 23

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011)......................................................................16

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC,*
   958 F.3d 1178 (Fed. Cir. 2020)......................................................................23

*Electric Power Grp., LLC v. Alstom S.A.,*
   830 F.3d 1350 (Fed. Cir. 2016)................................................ 11, 17, 18, 22

*Enfish, LLC v. Microsoft Corp.,*
   822 F.3d 1327 (Fed. Cir. 2016)......................................................................15

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.,*
   955 F.3d 1317 (Fed. Cir. 2020)......................................................................13

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
   839 F.3d 1089 (Fed. Cir. 2016)......................................................................11

*Intellectual Ventures I LLC v. Symantec Corp.,*
   838 F.3d 1307 (Fed. Cir. 2016)........................................................................9

*Interval Licensing LLC v. AOL, Inc.,*
   896 F.3d 1335 (Fed. Cir. 2018).............................................................. 11, 22, 24

*RecogniCorp, LLC v. Nintendo Co.,*
   855 F.3d 1322 (Fed. Cir. 2017)................................................................ 17, 18

*SAP Am., Inc. v. InvestPic, LLC,*
   898 F.3d 1161 (Fed. Cir. 2018)............................................................... *passim*

*Simio, LLC v. FlexSim Software Prods., Inc.,*
   983 F.3d 1353 (Fed. Cir. 2020).................................................................. 8, 23

*Trading Techs. Int'l, Inc. v. IBG LLC,*
   921 F.3d 1084 (Fed. Cir. 2019)............................................................... *passim*

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
   874 F.3d 1329 (Fed. Cir. 2017)........................................................... 9, 11, 15, 21

*Ultramercial, Inc. v. Hulu, LLC,*
   772 F.3d 709 (Fed. Cir. 2014) ................................................................19

*Universal Secure Registry LLC v. Apple Inc.,*
   469 F. Supp. 3d 231 (D. Del. 2020),
   *aff'd*, 10 F.4th 1342 (Fed. Cir. 2021) ....................................... 8, 17, 20

*University of Florida Research Found., Inc. v. Gen. Elec. Co.,*
   916 F.3d 1363 (Fed. Cir. 2019) .................................................... *passim*

*WhitServe LLC v. Donuts Inc.,*
   390 F. Supp. 3d 571 (D. Del. 2019),
   *aff'd*, 809 F. App'x 929 (Fed. Cir. 2020) ...............................................8

*Yu v. Apple Inc.,*
   1 F.4th 1040 (Fed. Cir. 2021) ...............................................................20

## STATUTES

35 U.S.C. § 101 ................................................................ *passim*

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Alcon Inc., TrueVision Systems, Inc., and Alcon Pharmaceuticals Ltd. (collectively, "Alcon") allege infringement of U.S. Patent Nos. 8,903,145 ("'145 patent") and 10,368,948 ("'948 patent") (collectively, the "asserted patents"). D.I. 1 ("Complaint").  Defendants AMO Development, LLC, AMO Manufacturing USA, LLC, AMO Sales and Service, Inc., and Johnson & Johnson Surgical Vision, Inc. (collectively, "J&J") move to dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) for lack of patent-eligible subject matter under 35 U.S.C. § 101.

## II.      SUMMARY OF ARGUMENT

Alcon's patents do not claim an improved or innovative medical device, computer, or surgical technique.  They claim only abstract ideas implemented with conventional computer and medical equipment, and thus are ineligible for patent protection under § 101 and *Alice Corporation v. CLS Bank International*, 573 U.S. 208, 216-18 (2014).  The claims fail *Alice's* two-step test for patent eligibility: (1) they are, at root, directed to the abstract idea of collecting, analyzing, and displaying information that doctors have long used to perform certain procedures and (2) they add nothing inventive, only admittedly conventional computer and medical technology.  Accordingly, the Court should dismiss the Complaint with prejudice for failure to state a legally viable claim.

At *Alice* step one, Alcon's claims focus on the abstract idea of collecting, analyzing, and displaying eye-related information that is useful to eye surgeons.  The patents claim overlaying information on an image of a patient's eye, such as where to make an incision.  *See* '145 patent, Abstract (overlaying "context information"); '948 patent, Abstract (overlaying "virtual indicium").  The patents expressly admit, however, that surgeons long marked incision locations by hand, with a pen, directly on the eye before operating.  '145 patent, 1:30-34, 1:53-61; '948 patent, 1:34-41.  The patents also do not solve a *technological* problem or provide a *technological* improvement.  The patents only automate this "'manual' process" ('145 patent, 5:5) using well-known and conventional technology.  *E.g.*, *id.* at 7:7-62; '948 patent, 3:45-47, 6:62-7:24, 9:3-10:55.

At *Alice* step two, Alcon's claims add nothing inventive apart from the abstract idea.  Here again, the patents admit that the purported inventions require only generic computer components ("PC" or "microprocessor"), *e.g.*, '145 patent, 7:8; '948 patent, 7:44, and "existing," conventional medical techniques and equipment ("eye tracking mechanism" and "surgical microscope"), *e.g.*, '145 patent, 6:49-52, 8:5-10, 14:56-62; '948 patent, 7:59-8:34.

These claims are similar to ones the Federal Circuit and courts in this District have found ineligible on the pleadings, including claims for (1) collecting, analyzing, and pictographically presenting patients' heartbeat data, *CardioNet, LLC v.*

*InfoBionic, Inc.*, 816 F. App'x 471 (Fed. Cir. 2020); (2) collecting, analyzing, and presenting patients' physiological data from bedside machines, *University of Florida Research Foundation, Inc. v. General Electric Co.*, 916 F.3d 1363 (Fed. Cir. 2019); and (3) collecting, analyzing, and superimposing data on images of patients' teeth, *Align Technology, Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435 (D. Del. 2018).  All purported to assist doctors.  But all were ineligible because they boiled down to processing and displaying physiological information using conventional computer and medical technology.  So too here.  Alcon's Complaint should be dismissed with prejudice.

## III.   STATEMENT OF FACTS

### A.    The Asserted Patents' Written Descriptions

Alcon's asserted '145 and '948 patents describe steps for displaying useful eye-related information (e.g., the location of an incision) on a real-time image of the eye to assist an eye surgeon.  *See, e.g.*, '145 patent, Abstract, 2:6-18; '948 patent, Abstract, 2:41-45.  Both patents focus on that central goal, using slightly different terms (e.g., the useful information is dubbed "context information" in the '145 patent and "virtual indicium" in the '948 patent).  *See, e.g.*, '145 patent, 1:66-2:2, 3:12-15, 7:7-8:18, Fig. 4; '948 patent, 1:34-2:37, 5:58-64, Fig. 8.

For example, Figure 4 of the '145 patent depicts the context information (incision markers) overlaid on a "live" image of an eye:



'145 patent, Fig. 4; *see also* '948 patent, Fig. 8 (similar).

The patents explain that, in preparing for surgery, surgeons previously drew markings on a patient's eye "manually" using a pen. '145 patent, 1:55-56; *see id.* at 1:30-34; '948 patent, 1:34-41 ("surgeon m[ade] reference markings directly on the patient's [eye] with a pen or other form of dye or ink marking"—"freehand and best guess techniques"). In addition to being "very tedious work for the surgeon," the drawn markings could "become fuzzy or … disappear over time, which [could] negatively affect the performance and accuracy of the surgery." '145 patent, 1:58-61; *see* '948 patent, 1:49-2:3 (the eye's "wet surface" or "pre-surgical rinsing, sterilization, or drug administration" could alter or remove markings). Also, the eye's natural movement further complicated matters. '948 patent, 12:51-59.

The patents' purported advance is using a computer to collect and display useful diagnostic or surgery-planning information on a live image of the eye. *See,*

*e.g.*, '145 patent, 3:12-15 (overlaying "surgery planning data" or "diagnostic information … can be of great help during surgery"); *see also id*. at Abstract, 1:66-2:2, 7:7-8:18; '948 patent, Abstract, 1:34-2:37, 5:58-64.  But the patents admit that the purported invention requires no improved computer technology.  *Any* conventional computer (even "a PC") can collect the reference image, track the live image, and overlay the context information on the live image.  *See* '145 patent, 7:7-13, 7:42-47, 7:58-62, 14:63-15:4; '948 patent, 3:45-47, 6:62-7:24, 9:3-4.  The patents provide no special interface, software, or algorithm for performing those basic tasks.  *See, e.g.*, '145 patent, 9:66-10:3, 13:25-28, 15:5-11; '948 patent, 3:45-47, 9:62-65, 17:55-57.  The patents also admit that the purported invention requires no improved medical equipment—"[e]xisting" technology and techniques can be used.  '145 patent, 6:49-52, 8:5-10, 14:56-62; '948 patent, 3:35-39, 7:59-65, 8:20-34, 15:17-20.

## B.    The Patent Claims

The patent claims recite basic steps for collecting, analyzing, and displaying eye-related information.  The Complaint specifically addresses only claim 1 from each patent and accuses essentially the same features of J&J's product of infringing both claims.  Compl. ¶¶ 29-71.  Those claims are representative and set forth below.

The '145 patent claims recite: (1) <u>collecting</u> a reference image of the eye, a real-time image of the eye, and context information; (2) <u>analyzing</u> the data to add

the context information to the reference image and align it with the real-time eye image; and (3) <u>displaying</u> the context information on the real-time eye image and indicating any angular displacement.

For example, representative claim 1 of the '145 patent provides:

> 1. A method for image processing for computer-aided eye-surgery, said method comprising:
>   acquiring a reference image of the eye;
>   enriching said reference image by inserting additional context information helpful for a surgeon when performing the eye surgery;
>   registering said reference image with a real-time image of the eye, wherein registering the reference image with the real-time image includes determining an angular displacement between the real-time image and the reference image; and
>   overlaying the context information and a visual representation of the angular displacement over the real-time image of the eye based on a tracking of the eye movement such that the context information is displayed at the same relative position on the real-time image as the enriched reference image despite a movement of the eye and such that the visual representation of the angular displacement indicates an amount of angular displacement of the real-time image relative to the reference image.

The '948 patent claims are similar, except using different terms: a "pre-operative still image" (instead of a "reference image") and a "virtual indicium" (instead of "context information"). The claims recite: (1) <u>collecting</u> a pre-operative still image, a real-time image of the eye ("multidimensional visualizations"), and a virtual indicium; (2) <u>analyzing</u> that data to add the virtual indicium to the pre-

operative still image and align it with the real-time eye image; and (3) <u>displaying</u> the

virtual indicia on the real-time eye image.

For example, representative claim 1 of the '948 patent provides:

> 1. An apparatus for guiding an astigmatism correction procedure on an eye of a patient, the apparatus comprising:
>> a data processor configured to receive a pre-operative still image of an ocular target surgical site of the patient prior to the astigmatism correction procedure and prior to cyclorotation of the eye when the patient lies down for surgery; and
>> a real-time, multidimensional visualization module including a photosensor and an image processor, the module configured to produce, on at least one display, real-time multidimensional visualizations of the ocular target surgical site during the astigmatism correction procedure,
>> wherein the data processor is configured to:
>>> receive a virtual indicium that includes data for guiding the astigmatism correction procedure;
>>> integrate the virtual indicium with the pre-operative still image such that the virtual indicium is rotationally accurate with respect to the target surgical site displayed within the pre-operative still image;
>>> determine movement within the ocular target surgical site by tracking a position of at least one identifiable visual feature;
>>> align the pre-operative still image including the virtual indicium with the multidimensional visualizations such that the pre-operative still image and the virtual indicium are rotationally accurate and track the determined movement with respect to the ocular target surgical site displayed within the multidimensional visualizations; and
>>> display the multidimensional visualizations of the ocular target surgical site in conjunction with the pre-operative still image including the virtual indicium.

## IV.   LEGAL STANDARDS

### A.   Motions To Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The Court accepts well-pleaded factual allegations but disregards conclusory statements and legal conclusions. *Universal Secure Registry LLC v. Apple Inc.*, 469 F. Supp. 3d 231, 235 (D. Del. 2020), *aff'd*, 10 F.4th 1342 (Fed. Cir. 2021); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).  "It is well-settled that courts may determine patent eligibility under § 101 at the Rule 12(b)(6) stage." *WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 575 (D. Del. 2019) (collecting cases), *aff'd*, 809 F. App'x 929 (Fed. Cir. 2020).

### B.   Patent Eligibility Under 35 U.S.C. § 101

The two-step *Alice* framework governs whether claims are ineligible under § 101.  573 U.S. at 217-27.  At step one, the Court determines whether the asserted claims are, at root, directed to an abstract idea despite the computer or technological features. *Id.* at 218.  The Court evaluates "'the focus of the claimed advance over the prior art' to determine if the character of the claim as a whole, considered in light of the specification, is directed to" an abstract idea. *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) (citations omitted).  At step two, the Court determines whether the other claim elements, individually or collectively, add

8

"significantly more"—something "inventive"—*apart* from the abstract idea.  *Alice*, 573 U.S. at 217-22.  The claims must do "more than simply instruct the practitioner to implement the abstract idea … on a generic computer."  *Id.* at 225.

At both steps, the patent-eligible subject matter cannot stem from the abstract idea itself.  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018).  Implementing an abstract idea in a "'particular … technological environment'" with conventional computer technology does not make the claims "'any less abstract'" and contributes nothing inventive.  *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314-16 (Fed. Cir. 2016) (citation omitted).  Nor may claims simply recite "'generic functional language to achieve [the] purported solutions'" without claiming "'*how* the desired result is achieved.'"  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (citation omitted).

## V.   ARGUMENT

The asserted patents' claims are ineligible under § 101 as a matter of law because they are directed to an abstract idea and add nothing inventive.

### A.   *Alice* Step One: The Claims Are Directed To The Abstract Idea Of Collecting, Analyzing, And Displaying Information

The asserted patents' claims are directed to collecting, analyzing, and displaying eye-related information to assist surgeons performing eye surgery.  The claims, therefore, focus on an abstract idea, not any particular technological improvement, as explained below.

9

### 1. The Representative Claims Are Directed To The Abstract Idea

The representative claims (claim 1 of each patent) focus on collecting, analyzing, and displaying eye-related information. Claim 1 of the '145 patent recites a "method for image processing" by: (1) collecting ("acquiring") a reference image of the eye, a real-time image of the eye, and "context information helpful for a surgeon when performing the eye surgery"; (2) analyzing the data to "insert[]" the context information into the reference image and "determin[e]" how the eye has moved relative to the reference image; and (3) displaying ("overlaying") the context information on the real-time eye "at the same relative position" as in the reference image. '145 patent, cl. 1; *supra* at 5-6. Likewise, claim 1 of the '948 patent recites materially indistinguishable elements, except with slightly different language: a "still image" instead of a "reference image" and "virtual indicia" instead of "context information." '948 patent, cl. 1; *supra* at 6-7. In addition, as discussed, the patents' written descriptions confirm that the purported advance is using a generic computer to collect, analyze, and display useful eye-related information. *Supra* at 3-5.

The representative claims are directed to an abstract idea for three reasons.

*First*, the Federal Circuit routinely finds that similar claims for collecting, analyzing, and displaying information to facilitate medical practice are directed to abstract ideas, not any technological advance. For example, in *CardioNet*, the computer-implemented claims for collecting heartbeat data, identifying certain

anomalies, and "pictographically presenting" the data were ineligible because "collecting, analyzing, and displaying cardiac data" are "quintessential abstract concepts." 816 F. App'x at 474-75. Similarly, in *University of Florida*, the computerized claims for receiving and analyzing physiological data from bedside machines and presenting it in a graphical interface were ineligible on the pleadings. 916 F.3d at 1366-67.[1] Likewise, here, Alcon's claims for collecting, analyzing, and displaying eye-related information in real time are directed to abstract concepts.

The Federal Circuit reached the same conclusion in numerous other technological contexts. The court, for example, found ineligible claims for displaying a "purportedly new arrangement" of financial information on a common "scaled axis" (*Trading Techs.*, 921 F.3d at 1092-93), concurrently displaying power grid information to diagnose problems in "real-time" (*Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)), and delivering "real-time" information about computer networks (*Two-Way Media*, 874 F.3d at 1333-35). The claims here are equally abstract and ineligible.

In addition, in *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1341, 1345 (Fed. Cir. 2018), the Federal Circuit held ineligible computer claims for the

---

[1] *See also*, *e.g.*, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (collecting, analyzing, and presenting medical data "in real time"); *CardioNet, LLC v. InfoBionic, Inc.*, 2021 WL 5024388, at *2 (Fed. Cir. Oct. 29, 2021) (collecting, analyzing, and displaying "real-time" heartbeats).

"collection, organization, and display of two sets of information on a generic display device" using an "attention manager" to "display … the acquired content in a manner that avoids overlapping with the already-displayed content."  Just as displaying two sets of information in non-overlapping fashion was abstract in that case, so too is displaying overlapping content here.

Courts in this District also found similar claims ineligible under § 101.  In *Align Technology*, the court held ineligible computer-based method claims for defining a "finish line" for placing a dental prosthesis (e.g., a crown) on a patient's tooth.  339 F. Supp. 3d at 451.  Unlike the prior-art approach in which dentists manually marked the finish line "in ink" before making the prosthesis, the claims used a computer to "superimpos[e] an image" of the finish line on an image of a tooth, *id.* at 451-52, as shown:



FIG. 4

U.S. Pat. No. 7,112,065, Fig. 4.  Likewise, here, the computer-based claims for overlaying useful information to assist surgeons are directed to an abstract idea and ineligible.

*Second*, the written descriptions admit that surgeons can—and long did—manually mark context information on the eye with a pen. *See* '145 patent, 1:30-34, 1:55-56; '948 patent, 1:34-41; *supra* at 4. Thus, the purported invention merely uses a computer to automate an otherwise manual information-display process. That confirms the claims are, at root, directed to an abstract idea. *See, e.g.*, *University of Florida*, 916 F.3d at 1367 (claims that "automate 'pen and paper methodologies'" previously done "manually" are abstract); *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) ("the sort of process that 'can be performed in the human mind, or by a human using a pen'" is abstract); *Align Tech.*, 339 F. Supp. 3d at 452 (steps that "'could be performed by humans in non-computerized … contexts'" are abstract (citation omitted)).

Even if the claims make the surgeon's task easier or more efficient, *see* '145 patent, 5:4-15, they provide no patent-eligible advance in the technology itself. The purported advantages are "merely the result of the use of computer technology." *Align Tech.*, 339 F. Supp. 3d at 452. In *CardioNet*, the claims provided heart monitoring systems that "improve[d] accuracy" and "may be very useful to physicians." 816 F. App'x at 476. In *University of Florida*, the claims allowed a "laudable" improvement in medical diagnoses. 916 F.3d at 1367. And in *Trading Technologies*, the claims "assist[ed] traders in processing information more quickly." 921 F.3d at 1093. But in each, the court held the claims ineligible because

13

they "d[id] not improve the functioning of the computer [or other technology], make it operate more efficiently, or solve any technological problem." *Id.* The same is true here. Even if the "automation" here improves surgical outcomes, that "does not render it any less abstract." *University of Florida*, 916 F.3d at 1367.[2]

*Third*, the written descriptions confirm that the claims are directed not to a technological improvement, but instead use conventional computer or medical technology as tools to implement the abstract idea. For instance, the '145 patent admits that any "PC" can store the reference image, enrich it with context information, track the live eye image, and overlay the context information on the live eye image. '145 patent, 7:7-11, 7:42-47, 7:57-62. The '948 patent similarly admits that the claims' generic computer processing components ("data processor" and "visualization module") can be any "computer or microprocessor with appropriate software" to perform the claimed steps. '948 patent, 3:45-47.[3] The patents further acknowledge that the purported invention uses known medical

---

[2] *See also SAP*, 898 F.3d at 1163 ("No matter how much of an advance in the finance field the claims recite, the advance lies entirely in the realm of abstract ideas …."); *CardioNet*, 2021 WL 5024388, at *4 (ineligible claims purported to provide "improved heart monitoring device" that "increase[d] accuracy").

[3] *See also* '948 patent, 9:3-4 ("display" can be "any device capable of displaying"); *id.* at 9:65-10:55 ("user control input" can be "mouse" or other device "known in the art"); *id.* at 3:29-43, 7:4-24 ("visualization module" can be any device, including ones disclosed in *other* patent applications, to perform recited image functions); '948 PH, 01/24/2019 Am. (examiner's undisputed finding that "data processor" and "real-time, multidimensional visualization module" are "generic placeholders").

technology (such as "an eye tracking mechanism according to the prior art") and can even be "retrofitted" into "existing" surgical equipment with "conventional controls." *See* '145 patent, 6:49-55, 8:5-10, 14:56-62; '948 patent, 3:35-39, 7:59-65, 8:20-34, 15:17-19.

Relatedly, the claims are broadly phrased in functional, result-oriented language, with little to no detail on how to accomplish their purported advance. *See, e.g.*, '145 patent, Fig. 3 (depicting black-box components implemented on PC), 14:63-15:4 (can use any "microprocessors or computers which are suitably programmed" to perform the functions and any combination of "hardware [and/or] software"), 15:5-11 ("computer program … enables the computer to operate in accordance with" the invention); '948 patent, 3:45-47 ("data processor" has "appropriate software"). That further confirms abstraction at step one. *See*, *e.g.*, *Two-Way Media*, 874 F.3d at 1337-38 (result-based steps of "converting," "routing," "controlling," "monitoring," and "accumulating records" did not "sufficiently describe how to achieve these results in a non-abstract way").[4]

Claim 1 of each asserted patent is directed to an abstract idea at step one.

---

[4] Thus, the claimed invention is nothing like the type of "specific … improvement[s] in computer capabilities"—particular solutions to technological problems—that are eligible at step one. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (improved database technology).

## 2.     The Other Claims Are Directed To The Same Abstract Idea

The two other independent claims are directed to the same abstract idea. Claim 8 of the '145 patent recites the same basic steps as representative claim 1 of the '145 patent, albeit couched as an "apparatus" instead of a "method." Conversely, claim 19 of the '948 patent is materially the same as representative claim 1 of the '948 patent, except it recites a "method" instead of an "apparatus." These surface differences do not change the analysis because this Court "look[s] to the underlying [purported] invention for patent-eligibility purposes." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011); *see Alice*, 573 U.S. at 226 (computer "method" and "system" claims "fail for substantially the same reasons"). Thus, these independent claims are "substantially similar and linked to the same abstract idea" as the representative claims. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).[5]

The same is true of the dependent claims. They merely recite additional steps attendant to the same goal of overlaying context information or generic computer components for achieving it. The dependent claims' limitations fall into five categories, none of which makes the claims non-abstract.

---

[5] The Court can find all claims ineligible based on the representative claims. *See Content Extraction*, 776 F.3d at 1348 (holding 242 claims ineligible based on two representative claims as all were "substantially similar and linked to the same abstract idea"). But Alcon's claims are ineligible even considered individually, as explained herein.

*First*, most dependent claims recite the content, form, or timing of the information that is displayed over the eye. '145 patent cls. 4, 6, 11, 13; '948 patent cls. 4-7, 10, 12, 13, 15, 17, 18, 20.  The overlaid information, for example, can be "diagnostic data" or "surgery planning data" ('145 patent cls. 4, 11), "incision" information (*id.* cls. 6, 13; '948 patent cl. 13), "transparent" ('948 patent cl. 4), aligned with the eye's features (*id.* cl. 5-7, 10, 20), at "desired depths" (*id.* cl. 12), or displayed after the reference image is locked in place (*id.* cl. 15).  But such details do not make the claims less abstract.  *See, e.g.*, *Electric Power*, 830 F.3d at 1353 (specifying the "type" of displayed information does not make claims eligible).

*Second*, other dependent claims recite allowing user input to control the displayed information—by switching it on or off ('145 patent cls. 5, 12), changing its transparency or locking it in place (*id.* cls. 2, 3), or selecting and positioning the context information ('948 patent cls. 16, 21).  But the Federal Circuit has held that claims are directed to abstract ideas (and ineligible) despite precisely such user input.  *See, e.g.*, *Universal Secure Registry*, 10 F.4th at 1351 ("user interface … to receive a user input"); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1324 (Fed. Cir. 2017) ("user interface" for user to "select[] a facial feature image from the first area of the first display").  And, here, the patents admit that no particular or improved input devices are disclosed—a standard mouse will suffice.  *Supra* at 14 n.3.

*Third*, still other dependent claims describe the data collection: the overlaid information can be drawn from "patient preoperative data" ('948 patent cl. 8) or received from the surgeon pre-surgery (*id.* cl. 9); and the reference image can be taken while the patient is upright and dilated (*id.* cl. 11).  But merely describing the "source" or conditions of data collection does not make the claims non-abstract. *Electric Power*, 830 F.3d at 1355.

*Fourth*, certain dependent claims recite determining the "location" of the context information by converting between the "coordinate systems" of the reference image and the real-time image of the eye.  '145 patent cls. 2, 3, 9, 10.  But the patents never suggest that those calculations are unique or inventive.  For good reason. Those are basic mathematical operations—themselves abstract concepts—and "overlay[ing] a second layer of abstraction" does not make the claims non-abstract. *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 532 (Fed. Cir. 2021); *see RecogniCorp*, 855 F.3d at 1327 ("Adding one abstract idea (math) to another abstract idea … does not render the claim non-abstract."); *Burnett v. Panasonic Corp.*, 741 F. App'x 777, 780 (Fed. Cir. 2018) ("convert[ing] geospatial coordinates" is abstract); '145 patent, 10:15-16 (surgeons previously used "manual, ink based steps for transforming the coordinate system").

*Fifth*, the remaining two dependent claims recite wholly generic computer and medical implementation: using "computer program code" to perform the claimed

functions (*id.* cl. 7), and using a "laser" to perform a cut ('948 patent cl. 14).  Those are the very definition of generic, functional limitations that do not save claims from abstraction.  *See, e.g.*, *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) (claims abstract despite "tangible" electric vehicle charging components and computer implementation); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014) ("token extra-solution activity" does not save claims).

Therefore, the dependent claims' inconsequential features do not make the claims less abstract.  *See BSG Tech. LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 n.1 (Fed. Cir. 2018) (dependent claims abstract despite differences and additional limitations).  For § 101 purposes, all claims are materially the same and focus on the same abstract idea at *Alice* step one: collecting, analyzing, and displaying eye-related information to assist surgeons performing eye surgery.

### B.    *Alice* Step Two: The Claims Add Nothing Inventive

At *Alice* step two, the Court must determine whether the claims add something "significant" "apart from" the abstract idea—an inventive concept that "transform[s] the abstract idea … into a patent-eligible application."  *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019); *see ChargePoint*, 920 F.3d at 774 (must add "significantly more" than the "use of [the abstract idea] itself").  Alcon's claims do not.

### 1.    The Representative Claims Add Nothing Inventive

Beyond the abstract idea, the representative claims recite only conventional or generic technology for performing conventional functions without specifying any inventive means for doing so.  As discussed, they merely use generic computer functions (e.g., collecting, analyzing, and displaying image data), generic computer components (e.g., "data processor," "visualization module," "photosensor," "image processor"), and generic medical technology (e.g., "tracking of the eye movement").  *See* '145 patent cl. 1; '948 patent cl. 1; *supra* at 5-7, 14-15.

The patents admit that those basic functions and components require only known and conventional off-the-shelf hardware and software.  *Supra* at 14 & n.3; *see SAP*, 898 F.3d at 1168 ("specification makes clear that off-the-shelf computer technology is usable to carry out the analysis").  Those are the same "basic functions of a computer" and "purely functional and generic" computer and medical components that courts have found merely automate the abstract idea in a "particular technological environment"—which is insufficient to add an inventive concept. *Alice*, 573 U.S. at 225-26; *see*, *e.g.*, *Yu v. Apple Inc.*, 1 F.4th 1040, 1041-43 (Fed. Cir. 2021) (claims reciting "image sensors," "digital image processor," and "using one picture to enhance the other" are non-inventive); *Universal Secure Registry*, 10 F.4th at 1352-53 ("biometric sensor, user interface, communication interface, and

processor" are non-inventive); *CardioNet*, 816 F. App'x at 476 (heartbeat monitors and pictographically displaying data are non-inventive); *supra* at 10-12.

Even when the claims' basic features are viewed "as an ordered combination," the claims "ad[d] nothing ... that is not already present when the steps are considered separately." *Alice*, 573 U.S. at 225 (citation omitted). There is no "specific implementation" or "specific improvement" in computer technology that might provide an inventive concept. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1348-49 (Fed. Cir. 2016). Indeed, "it is clear, from the claims themselves and the specification, that these limitations require no improved computer [or medical] resources [that Alcon] claims to have invented, just already available [technologies], with their already available basic functions, to use as tools in executing the claimed process." *SAP*, 898 F.3d at 1169-70. The claims also add nothing inventive as they use functional language without sufficiently describing how to achieve the results. *Supra* at 15; *Two-Way Media*, 874 F.3d at 1337.

### 2.    The Other Claims Add Nothing Inventive

The other two independent claims ('145 patent claim 8 and '948 patent claim 19) recite the same conventional, non-inventive computer and medical components. *Supra* at 16. The dependent claims fare no better, as they too add only conventional components and other incidental features. *Supra* at 16-19. As discussed, most merely specify the content, form, or timing of the information that is displayed over

the eye, and the rest add only inconsequential or generic limitations. *Id.* Just as those limitations did not make the claims non-abstract at step one, they also add nothing inventive at step two. *See, e.g.*, *Electric Power*, 830 F.3d at 1353.

In the end, the claims' purported advance is the abstract idea of collecting, analyzing and displaying eye-related information, and any purported benefits flow from implementing that concept using conventional technology. *See*, *e.g.*, '145 patent, 5:4-15; '948 patent, 2:41-45; *supra* at 3-5, 13-14. But use of "the abstract idea itself cannot supply the inventive concept." *Trading Techs.*, 921 F.3d at 1093 (citation omitted). The asserted patents' claims add nothing inventive at *Alice* step two and, therefore, lack patent-eligible subject matter under § 101.

## C.     The Claims Should Be Found Ineligible On The Pleadings

Patent-eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6)" motion. *SAP*, 989 F.3d at 1166. This case is no exception—there is no plausible allegation of inventiveness outside the abstract realm.

As discussed, the patent claims do not focus on any specific improvement in computer or medical technology, but rather, on an abstract idea that humans can (and did) perform manually, and require only conventional and generic components. *Supra* at 3-5, 9-22. Therefore, the claims are just like ones found ineligible as a matter of law on the pleadings in cases such as *CardioNet*, *University of Florida*, *Interval Licensing*, and *Align Technology*. *Supra* at 10-14. No claim construction

could change that conclusion given the patents' admitted focus on displaying information (the abstract idea) and use of known technology. *See Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020) (claim construction would not "affect the analysis"); *Content Extraction*, 776 F.3d at 1349 (ineligible "even when construed in a manner most favorable to [patentee]").

In addition, Alcon's Complaint does not—and cannot—"plausibly allege[]" any genuine technological improvements or inventive features apart from the abstract idea. *SAP*, 898 F.3d at 1163. Indeed, the Complaint is silent on eligibility— nowhere suggesting, let alone explaining, how the claims solve any technological problem or purport to utilize improved or unconventional technology. The Complaint merely asserts that the patents are "valid and enforceable." Compl. ¶¶ 32, 52. But this Court "disregard[s] [such] conclusory statements when evaluating a complaint [for patent-eligibility] under Rule 12(b)(6)." *Simio*, 983 F.3d at 1365.[6]

In sum, the patents themselves establish that the claims do not provide or require any technological improvement and, instead, are rooted in an abstract concept. The intrinsic record is dispositive and "no disputed facts material to the issue of patent eligibility" preclude resolving the issue at this stage. *Interval*

---

[6] In the rare cases where the Federal Circuit found fact issues at *Alice* step two, the complaints and patents explained in detail how the claimed features specifically improved the computer technology itself. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127-28 (Fed. Cir. 2018). Not so here.

*Licensing*, 896 F.3d at 1342 n.4.  The Federal Circuit and a court in this District found materially indistinguishable claims ineligible on motions to dismiss.  That is the proper outcome here, too.

## VI.   CONCLUSION

The Complaint should be dismissed with prejudice under § 101.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

OF COUNSEL:

Michael A. Morin
Matthew J. Moore
Gabriel K. Bell
Ashley M. Fry
Kelley M. Storey
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
(202) 637-2200

Roger J. Chin
Gabriel S. Gross
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 491-0600

Jacob T. Whitt
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

February 18, 2022

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants*
*AMO Development, LLC,*
*AMO Manufacturing USA, LLC,*
*AMO Sales and Service, Inc. and*
*Johnson & Johnson Surgical Vision, Inc.*

## **WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 4,987 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the brief.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.


*/s/ Anthony D. Raucci*

_____

Anthony D. Raucci (#5948)

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 18, 2022, upon the following in the manner indicated:

John W. Shaw, Esquire                                           *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Jeannie Heffernan, Esquire                                     *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
*Attorneys for Plaintiffs*

Gregg LoCascio, Esquire                                        *VIA ELECTRONIC MAIL*
Sean M. McEldowney, Esquire
Noah S. Frank, Esquire
Hannah L. Bedard, Esquire
Socrates Boutsikaris, Esquire
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Plaintiffs*

Caroline Lourgos, Esquire                    *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
*Attorneys for Plaintiffs*

Kristen P.L. Reichenbach, Esquire            *VIA ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
*Attorneys for Plaintiffs*


                              */s/ Anthony D. Raucci*
                              _____
                              Anthony D. Raucci (#5948)