IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCON INC., TRUEVISION SYSTEMS, INC., and ALCON PHARMACEUTICALS LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 21-1804-CFC |
| AMO DEVELOPMENT, LLC, AMO MANUFACTURING USA, LLC, AMO SALES AND SERVICE, INC., and JOHNSON & JOHNSON SURGICAL VISION, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' ANSWERING BRIEF
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(6)

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs*

OF COUNSEL:
Jeanne M. Heffernan
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9123

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Hannah L. Bedard
Socrates Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Joshua L. Simmons
Matthew A. Lembo
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Dated: March 25, 2022

# TABLE OF CONTENTS

Page

| | | | |
|---|---|---|---|
| I. | NATURE AND STAGE OF THE PROCEEDINGS | | 1 |
| II. | SUMMARY OF ARGUMENT | | 1 |
| III. | STATEMENT OF FACTS | | 3 |
| | A. | The Asserted Patents | 3 |
| | B. | The Infringing Technology | 6 |
| IV. | LEGAL STANDARDS | | 8 |
| V. | ARGUMENT | | 9 |
| | A. | *Alice* Step One. | 9 |

1. J&J's Oversimplification Of The Claims Violates Well-Established Precedent. .......................................................... 9

2. The Claimed Inventions Solve The Problem Of Accurately Linking Pre-Surgery Diagnostics And Planning With The Patient's Eye Under Surgery. ..................... 12

| | B. | *Alice* Step Two. | 19 |
| VI. | CONCLUSION | | 21 |

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3G Licensing, S.A. v. HTC Corp.*,
  2019 WL 2904670 (D. Del. July 5, 2019) ..........................................................12

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ....................................................................8, 20

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)................................................................8, 9, 10, 14

*Align Tech., Inc v. 3Shape A/S*,
  2020 WL 5979353 (D. Del. Oct. 8, 2020) ..........................................................16

*Align Technology, Inc. v. 3Shape A/S*,
  339 F. Supp. 3d 435 (D. Del. 2018)............................................................18, 19

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ..............................................................2, 19, 20

*Buck v. Hampton Twp. Sch. Dist.*,
  425 F.3d 256 (Fed. Cir. 2006) ................................................................................8

*CardioNet, LLC v. InfoBionic, Inc.*,
  2021 WL 5024388 (Fed. Cir. Oct. 29, 2021) .....................................................18

*CardioNet, LLC v. Infobionic, Inc.*,
  955 F.3d 1358 (Fed. Cir. 2020) ..................................................................14, 18

*CardioNet, LLC v. Infobionic, Inc.*,
  816 F. App'x 471 (Fed. Cir. 2020) ......................................................................18

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019) ..........................................................................20

*EagleView Techs., Inc. v. Xactware Sols., Inc.*,
  485 F. Supp. 3d 505 (D.N.J. 2020)......................................................................15

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ..................................................................10, 14

iv

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ................................................................................. 8

*Groove Digital, Inc. v. Jam City, Inc.*,
    2019 WL 351254 (D. Del. Jan. 29, 2019) ......................................................... 12

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (Fed. Cir. 1997) ........................................................................... 8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) .................................................................... 10, 16

*Mod Stack LLC v. Aculab, Inc.*,
    2019 WL 3532185 (D. Del. Aug. 2, 2019) ........................................................ 12

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ......................................................................... 14

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ......................................................................... 14

*Sound View Innovation, LLC v. Delta Air Lines, Inc.*,
    2020 WL 1667239 (D. Del. Apr. 03, 2020) ...................................................... 20

*Thales Visionix Inc. v. U.S.*,
    850 F.3d 1343 (Fed. Cir. 20217) ............................................................. 10, 14, 15

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
    675 F. App'x 1001 (Fed. Cir. 2017) .................................................................... 9

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1084 (Fed. Cir. 2019) ........................................................................... 9

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
    414 F. Supp. 3d 947 (E.D. Tex. 2019) ............................................................... 16

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) .................................................................... 16, 17

*Universal Secure Registry LLC v. Apple Inc.*,
    469 F. Supp. 3d 231 (D. Del. 2020) ................................................................... 14

*Vineyard Investigations v. E. & J. Gallo Winery*,
   510 F. Supp. 3d 926 (E.D. Cal. 2021) ..................................................................16

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017) ...........................................................................14

*Wildcat Licensing WI LLC v. Faurecia S.A.*,
   2019 WL 7067090 (D. Del. Dec. 23, 2019) .......................................................12

**Statutes**

35 U.S.C. § 101 .............................................................................................................1

**Rules**

Rule 12(b)(6)......................................................................................................8, 20

## I. NATURE AND STAGE OF THE PROCEEDINGS[1]

On December 23, 2021, Plaintiffs Alcon Inc., TrueVision Systems, Inc., and Alcon Pharmaceuticals Ltd. (collectively, "Alcon") filed their Complaint (D.I. 1) asserting that Defendants AMO Development, LLC, AMO Manufacturing USA, LLC, AMO Sales and Service, Inc., and Johnson & Johnson Surgical Vision, Inc. (collectively, "J&J") infringe two of Alcon's patents: U.S. Patent Nos. 8,903,145 ("the '145 Patent") and 10,368,948 ("the '948 Patent") (collectively, the "Asserted Patents"). On February 18, 2022, J&J moved to dismiss the Complaint, arguing the Asserted Patents are invalid under 35 U.S.C. § 101. (D.I. 16.) Alcon opposes.

## II. SUMMARY OF ARGUMENT

1. At step one of the *Alice* inquiry, J&J's gross overgeneralization of the claims as merely directed to "collecting, analyzing, and displaying eye-related information that is useful to eye surgeons" is exactly what the Federal Circuit has repeatedly warned against in §101 analyses. Br. at 2. Properly interpreted, the claims are directed not to an abstract idea but rather a technological improvement that J&J itself has touted as "avoiding problems that can arise from cyclorotation as well as docking-related tilt which [are] otherwise impossible for the surgeon to identify and compensate for." D.I. 1 ("Compl."), ¶15. As explained in the specifications, before the claimed inventions, eye surgeons were forced to rely on treatment by trial-and-

---

[1] All emphasis added unless otherwise noted.

error because they lacked the ability to translate pre-operative data to the surgical environment in a rotationally accurate manner that accounted for the natural movement of a patient's eye (*e.g.*, "cyclorotation"). '948 at 12:40-13:7, 14:58-15:6; '148 at 4:66-5:15, 9:46-59. The method recited in claim 1 of the '145 Patent addresses these issues by "registering" a pre-operative "reference image" to determine "angular displacement between the real-time image and the reference image." Claim 1 of the '948 Patent addresses these issues with a system that uses a "virtual indicium" for "guiding the astigmatism correction procedure" to align pre-operative images and real time visualizations in a "rotationally accurate" way. These claimed methods and systems offer "significant advantages compared to the conventional 'manual' process" ('145 Patent at 5:4-15) and enable "previously unobtainable features and advantages" ('948 Patent at 12:64-13:7). J&J's caricature of the claims divorces them from the context of the specifications, and the result is predictably an erroneous abstraction untethered from the claim language.

2. At step two of the *Alice* inquiry, J&J bears the burden of proving by clear and convincing evidence that all claim elements and the overall combination of elements are "well-understood, routine and conventional," which is a question of fact. *Berkheimer v. HP Inc*., 881 F.3d 1360, 1368-69 (Fed. Cir. 2018). As noted above, the specifications state that the claimed invention has "significant advantages" and enables "previously unobtainable features" compared to the prior

2

art. And, as alleged in the Complaint, J&J itself has rightly stated that the CATALYS® cOS 6.0 features Alcon accuses of practicing the claims solve problems that are "otherwise impossible for the surgeon to identify and compensate for." Compl., ¶15. These statements, which must be accepted as true at this stage, recognize the claimed features include inventive concepts that are patent eligible, not merely routine and conventional combinations. J&J's brief ignores these statements, despite their critical relevance to the factual inquiries under step two of *Alice*.

## III. STATEMENT OF FACTS

### A. The Asserted Patents

About 65% of eye surgery patients suffer from a condition called astigmatism, which occurs when the curvature of the cornea becomes irregular, causing blurry vision. '948 at 11:38-51, 12:4-28; '145 at 8:26-40. The patented technologies are often used to address this condition in connection with cataract surgery, which involves the removal of a clouded lens and the implantation of an artificial intraocular lens ("IOL") in the patient's eye. '145 at 1:14-20, 8:26-52; '948 at 11:46-51. Surgeons can address astigmatism in various ways, such as by creating relaxing incisions or selecting an IOL with a "toric" surface that compensates for astigmatism. '145 at 1:39-51, 8:34-36, 9:36-10:17; '948 at 2:4-30, 11:38-60, 12:29-39.

Although accurate placement of relaxing incisions and an IOL are critical, eyeball rotation and movement make this quite challenging. '145 at 1:36-51, 8:34-

3

36, 9:36-10:17; '948 at 2:4-30; 12:40-13:7. A typical procedure begins with a pre-operative assessment while the patient sits upright to determine the appropriate location and orientation for the relaxing incision and IOL. '145 at 1:13-44, 5:16-23; '948 at 2:4-30. Before the claimed inventions, surgeons had to use trial and error because they were unable to accurately translate this pre-operative data to the surgical environment due to several complicating factors, including the use of error prone manual pen markings, inaccurate visual measurements, cyclorotation,[2] and asymmetric pupil dilation. '145 at 1:52-65, 9:40-59, 14:42-55; '948 at 1:49-2:37, 12:40-13:7, 13:34-15:6, 15:36-49, 20:45-21:9.

The claimed inventions enable accurate translation of pre-operative data to a real-time image of the eye during surgery, obviating manual pen markings and compensating for cyclorotation. '145 at cl.1; '948 at cl.1. They provide several advantages not attainable with prior art methods. For example, prior-art methods required surgeons to rely on handmade pen marks placed on the eye prior to surgery, which were not only inaccurate but could blur or disappear. '145 at 1:52-65; *see also id.* at 2:35-39, 3:12-17, 5:4-15, 8:51-53, 9:60-10:17, 12:54-67, 13:38-43, 14:42-55; '948 at 1:25-2:45, 2:61-3:43, 12:40-15:6, 15:36-49, 20:45-21:9.

---

[2]     Cyclorotation refers to movement of the eye that naturally occurs when a patient moves from an upright seated position (e.g., during pre-operative exam) to a supine position (during surgery). Compl., ¶15; '145 at 9:46-54, 10:35-53; '948 at 12:51-63, 13:34-14:57.

4

By contrast, the invention described in the specification and covered by claim 1 of the '145 "register[s]" a pre-operative "reference image" to determine "angular displacement between the real-time image and the reference image."  It also overlays "context information" and "a visual representation of the angular displacement over the real-time image…such that the context information is displayed at the same relative position on the real-time image as the enriched reference image despite a movement of the eye."  '145 at cl.1.  This was one solution to the problem of accurately placing pre-operative context information during surgery, despite movement of the eye.  And it offered "significant advantages compared to the conventional 'manual' process," including "speeding up and simplification of the full process," "accuracy," and "safety."  '145 at 5:4-15; *see also id.* at 2:35-39, 8:51-53, 9:60-10:17, 12:54-67, 13:38-43, 14:42-55.

Likewise, the apparatus described in the specification and recited in claim 1 of the '948 includes a data processor to receive "virtual indicium" for "guiding the astigmatism correction procedure."  '948 at cl.1.  The claimed system then integrates the "virtual indicium with [a] pre-operative still image," determines "movement within the ocular target surgical site," and "align[s] the pre-operative still image" with the real time visualization.  *Id*.  The alignment is "such that the pre-operative still image and the virtual indicium are rotationally accurate and track the determined movement."  *Id*.  This was one solution to the problem of accurately orienting

5

astigmatism treatment patterns on a pre-operative image and a real-time visualization, thereby yielding "previously unobtainable features and advantages." '948 at 12:64-13:7; *see also id*. at 2:41-45 ("The apparatus and methods described herein address [a] long-felt need…."), 14:58-15:6, 15:36-49, 20:45-21:9.

## B.    The Infringing Technology

J&J's CATALYS® System is a commercial laser system for use in cataract surgery and astigmatism management.     Compl., ¶12.   In 2020, J&J launched CATALYS® cOS 6.0, which includes features that compensate for cyclorotation of the eye. *Id.* ¶¶13, 14-16.  The accused features address cyclorotation by matching a pre-operative image of the iris with a live intra-operative image, calculating the angular displacement, and adjusting the treatment plan accordingly. *Id.* ¶¶13-16. The Complaint alleges that those features infringe at least claim 1 of each Asserted Patent. *Id.* ¶¶34-40, 54-64.

J&J heralded that the accused features reach "unmet" needs and provide benefits previously "impossible" to obtain.  Compl., ¶¶14, 15; Ex. 1.  J&J also referred to the accused features as "new features for astigmatism management workflow, designed for ease, speed and accuracy for surgeons."   Compl., ¶13.  A press release from Cassini, J&J's development partner, further touted these features:

> ***Astigmatism management was previously an unmet need***, due to the cataract surgeons' discomfort with the tools and techniques available to us to deliver what we've promised to our patients. The Cassini Ambient integration with the ***Catalys cOS 6.0 gives us the ability to confidently***

6

> *recommend astigmatism management as part of the cataract procedure*, *powered by this new technology* that helps reduce transcription errors and increase accuracy and precision.

Compl., ¶¶13, 14; Ex. 3.  Another article cited in the Complaint states the accused features entail "a *big step forward* in the personalization and individualization of laser arcuate incisions."  *Id.*, ¶¶14, 16; Ex. 3.  That is because the accused features are designed to "avoid[] problems that can arise from cyclorotation as well as docking-related tilt, which is *otherwise impossible for the surgeon to identify and compensate for*."  Compl., ¶15.

J&J and others specifically extolled the advancement of the claimed technology over the traditional practice of manually marking a patient's eye.  Compl., ¶38 ("CATALYS cOS 6.0 with advanced astigmatism management not only provides *more accurate surgical alignment* and *automatic cyclorotation compensation that is three times better than manual markings*, the workflow will make the entire process easier and faster for me."); Ex. 3 (accused technology "*makes cataract surgery faster, easier and more accurate compared to manual marking*"); Ex. 4 (similar).

7

These statements—which are quoted and incorporated into the Complaint[3]—must be accepted as true at this stage, and they demonstrate that J&J and the industry do not believe that these features were merely well-understood, routine, and conventional.

## IV.   LEGAL STANDARDS

In deciding a Rule 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)), and "accept[] as true the complaint's factual allegations," *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1124 (Fed. Cir. 2018).

Courts apply a two-step framework to distinguish eligible from ineligible subject matter.  First, the Court determines whether the patent's claims are directed to an abstract idea.  Second, the court determines whether the claim elements would have been a well-understood, routine and conventional combination, or instead whether some "inventive concept" is claimed—"*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Alice Corp.*

---

[3]    The Complaint explicitly references publicly available articles, attached as Exhibits 1-7, the content of which are integral to the claims.  The Court may consider documents that are explicitly relied on in the Complaint on a motion to dismiss filed pursuant to Rule 12(b)(6).  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Buck v. Hampton Twp. Sch. Dist*., 452 F.3d 256, 260 (3d Cir. 2006).

8

*Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).

## V. ARGUMENT

J&J's *Alice* analysis violates established precedent by stripping the claims of their specific implementations to fabricate the abstract idea to which J&J contends the claims are directed. J&J also ignores the specifications and allegations in the Complaint establishing that the claims are more than conventional—the claims instead capture innovative, technical advances over the prior art. At minimum, material issues of fact remain as to whether the patents are directed to an abstract idea and whether the patents are an improvement over conventional technology. J&J's motion must be denied.

### A. *Alice* Step One.

#### 1. J&J's Oversimplification Of The Claims Violates Well-Established Precedent.

J&J's brief hinges on its assertion that all claims in the Asserted Patents are directed to the "abstract idea of collecting, analyzing, and displaying eye-related information that is useful to eye surgeons." Br. at 2.[4] This gross oversimplification

---

[4]     Despite J&J's assertions, *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) does not stand for the proposition that all claims involving displaying information are patent ineligible. To the contrary, the claims asserted in *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001 (Fed. Cir. 2017), which are more similar to the ones at issue here, were found patent ***eligible***. *Id.* at 1004 (finding claim eligible because it was "addressed to and resolves a specifically identified problem in the prior state of the art").

of the claims runs headlong into Supreme Court and Federal Circuit precedent proscribing abstractions that are "untethered from the language of the claims." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("We have previously cautioned that courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." (internal quotation marks omitted)); *Thales Visionix Inc. v. U.S.*, 850 F.3d 1343, 1347 (Fed. Cir. 20217) (same); *Alice*, 573 U.S. at 217 ("[W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law.  At some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." (internal quotation marks and citation omitted)).

Claim 1 of the '948 Patent does not merely recite elements generically calling for "collecting," "analyzing," and "displaying" imaging data, but rather claims an apparatus for solving in a specific way problems that surgeons had when using prior art methods.  It requires: receiving specific inputs ("pre-operative still image…prior to cyclorotation of the eye" and "a virtual indicium"); "tracking a position of [an] identifiable visual feature;" and using the claimed "multidimensional visualization module" to align the pre-operative image with the virtual indicum so that they are "rotationally accurate" on a real-time display during surgery.  Other claims in the

'948 Patent[5]—which J&J does not sufficiently address for the Court to assess whether the claims are ineligible—recite additional details far removed from J&J's proffered abstract idea, including modifying the display (claims 2, 3, 4, 15); additional details regarding the operation of the multidimensional visualization module and data processor (claims 5, 6, 7, 8, 17); details and examples regarding the virtual indicium (claims 10, 12, 13, 18); and details regarding astigmatism workflow and surgery using the claimed system (claims 9, 11, 14, 16).

Neither is claim 1 of the '145 Patent generically calling for "collecting," "analyzing," and "displaying" imaging data. To the contrary, it requires acquiring a "reference image of the eye," a "real-time image of the eye," and "context information;" and then registering the reference image and real-time image by determining and then overlaying an "angular displacement" between the two in order to display the context information in an accurate position. Other claims in the '145 Patent—which, again, J&J does not sufficiently address—recite additional details far removed from J&J's proffered abstract idea, including using specific coordinate systems (claims 2, 3, 9, 10); and specific examples of context information (claims 4, 6, 11, 13).

---

[5]     While Alcon specifically asserted only claim 1 from each of the Asserted Patents, Alcon believes that discovery will show that J&J's CATALYS® cOS 6.0 infringes several other claims.

To be sure, there are other ways of accounting for eye movement that do not infringe the Asserted Patents.  For example, the claims would not cover automating a surgeon's handmade marking of a dot on the eyeball, which could be accomplished by collecting information about the surgeon's desired manual marking and then having a computer analyze and display the marks without using the specific elements recited in the claims.  The Asserted Patents thus do not implicate the preemption concerns articulated in *Alice* or by the Federal Circuit.

J&J's failure to address details recited in the claims and the resulting oversimplification of the claimed subject matter is fatal to its motion.  *Wildcat Licensing WI LLC v. Faurecia S.A.*, 2019 WL 7067090, at *5 (D. Del. Dec. 23, 2019) (noting several judges in Delaware "have denied a motion to dismiss under 101 when the defendant failed to adequately characterize the idea to which the claims were directed, including when the defendant oversimplified the idea of the claims in its purported abstract idea"); *Mod Stack LLC v. Aculab, Inc.*, 2019 WL 3532185, at *3-4 (D. Del. Aug. 2, 2019) (denying motion on this ground); *3G Licensing, S.A. v. HTC Corp.*, 2019 WL 2904670, at *2 (D. Del. July 5, 2019) (same); *Groove Digital, Inc. v. Jam City, Inc.*, 2019 WL 351254, at *3 (D. Del. Jan. 29, 2019) (same).

### 2. The Claimed Inventions Solve The Problem Of Accurately Linking Pre-Surgery Diagnostics And Planning With The Patient's Eye Under Surgery.

The specifications explain how the inventions offer specific advantages over

12

the prior art, and the asserted claims specifically enable these improvements.  For instance, the '948 Patent claims a multidimensional visualization module and processor that, among other things, provide "rotationally accurate" information to the surgeon.  '948 at cl.1 ("align the pre-operative still image including the virtual indicium with the multidimensional visualizations" in a "rotationally accurate" manner "and track the determined movement"). The specification explains that the claimed multidimensional visualization module "allows the pre-operative image to be aligned accurately… regardless of whether the target surgical field has shifted, rotated or reoriented." *Id*. at 16:25-32; *see also id.* at 2:41-45, 2:61-3:43, 12:40-13:7, 15:36-49, 20:45-21:9.  The specification further discloses that embodiments of the invention enable "previously unobtainable features and advantages." *Id.* at 12:64-13:7.  These advantages include the ability to "create and use" "accurate, real-time, virtual reference indicium" and "clearly and accurately take into account the natural vertical axis of the patient despite any shifting due to cyclorotation." *Id*. at 14:58-15:6.

The '145 Patent likewise describes that its invention offers "significant advantages compared to the conventional 'manual' process," including "speeding up and simplification of the full process," "accuracy," and "safety." '145 at 2:35-39, 5:4-15; *see also id.* at 8:51-53, 9:60-10:17, 12:54-67, 13:38-43, 14:42-55.  Such advantages are the direct result of the claimed inventions' use of angular

13

displacement to "overlay the context information" on a real-time image in the "same relative position" "despite a movement of the eye." *Id.* at cl.1.

Accepting these statements in the specifications as true, as required by law, the claims are clearly patent eligible because they "improve[] an existing technological process." *Alice*, 573 U.S. at 223-25; *CardioNet, LLC v. Infobionic, Inc.*, 955 F.3d 1358, 1370 (Fed. Cir. 2020) ("*CardioNet I*") (written description "confirms that the asserted claims are directed to a specific technological improvement"); *see also Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259–60 (Fed. Cir. 2017) (citing written description of "advantages offered" as important to §101 analysis).

J&J's step one analysis ignores these statements and instead stretches precedent beyond reason.  First, J&J suggests there is a presumption that use of "conventional computer or medical technology" renders a claim patent ineligible. Br. at 14; *see also id.* at 10.  This is not the law.[6]  *See, e.g.*, *Thales*, 850 F.3d at 1348-49.  For instance, in *Thales*, claims were upheld even though executed entirely with

---

[6]    The fact that claims permit the use of a general purpose computer does not "doom[] the claims." *Enfish,* 822 F.3d at 1338-1339.  Unlike the cases on which J&J relies, the Court is not faced with a situation where "general-purpose computer components are added post-hoc to a fundamental economic or mathematical equation." *Id.*; *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018); *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017); *Universal Secure Registry LLC v. Apple Inc.*, 469 F. Supp. 3d 231, 240 (D. Del. 2020).

well-known and commonly used "inertial sensors." *Id*. at 1344-45. The claims were not ineligible because they were "directed to a new and useful technique for using sensors to more efficiently track an object on a moving platform." *Id.* at 1349. The use of "inertial sensors in [this] non-conventional manner … reduce[d] errors in measuring the relative position and orientation of a moving object on a moving reference frame." *Id.* at 1348-49. What mattered for §101 was that the unconventional technique yielded "results heretofore unknown in the art." *Id.* at 1347.

J&J identifies nothing in the record to show that conventional computers were previously used to calculate and track cyclorotation of the eye as claimed. On the contrary, the Complaint cites numerous articles extolling the unconventional benefits of features that Alcon alleges practice the claims. *See, e.g.*, Compl., ¶13 (CATALYS® cOS 6.0 "offers ***new features*** for astigmatism management workflow, designed for ease, speed and accuracy for surgeons…."); ¶15 (identifying problems previously "***impossible for the surgeon to identify and compensate for***."); Ex. 3 (describing CATALYS cOS 6.0 as more accurate, better than manual markings, easier and faster); Ex. 4 (same). In light of these assertions, J&J cannot establish, particularly on a motion to dismiss, that the claimed inventions did not yield specific and new results. *EagleView Techs., Inc. v. Xactware Sols., Inc.*, 485 F. Supp. 3d 505, 516 (D.N.J. 2020) (noting "Defendants sang a different tune hailing [the patented]

15

invention as the 'only one' that spans the two worlds of 3D imaging and analytics and accurate roof estimation.").

Second, J&J relies on *Univ. of Fla. Research. Found., Inc. v. Gen. Elec. Co.,* 916 F.3d 1363, 1367 (Fed. Cir. 2019) to suggest claims cannot be patent eligible if they "merely use[] a computer to automate an otherwise manual" process. Br. at 13. But that assertion improperly shortcuts the required analysis. Claims are not patent ineligible simply because they replace previously manual methods. In fact, courts routinely hold such claims patent-eligible where, as here, a claimed invention does more than merely replace a manual process with a computerized process. *See, e.g., McRO*, 837 F.3d at 1314, 1316 (finding claims employing computer to "perform a distinct process to automate a task previously performed by humans" patent eligible).

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.* is instructive. There, the court found the image-related features disclosed and claimed in the patent "do not involve the kind of information that could be readily assessed in real-time by a human user looking at the image on a mobile device screen." 414 F. Supp. 3d 947, 954-55 (E.D. Tex. 2019). Thus, although the claimed inventions "may seek to accomplish the same ends as the manual processes they replace, these types of tasks cannot be readily done by a human user with the precision required to satisfy the claims." *Id.*; *see also Align Tech., Inc v. 3Shape A/S*, 2020 WL 5979353, at *1-2 (D. Del. Oct. 8, 2020); *Vineyard Investigations v. E. & J. Gallo Winery*, 510 F. Supp. 3d 926, 940

16

(E.D. Cal. 2021).

Unlike in *University of Florida*, the patents here are not directed to automating "pen and paper methodologies" for the mere benefit of "conserv[ing] human resources and minimiz[ing] errors." 916 F.3d at 1367. Although the patented methods obviate prior manual methods, the written descriptions make clear that these methods are not equivalent and the patented methods provide distinct advantages not attainable with a doctor's pen. *See e.g.*, '948 at 2:41-45, 2:61-3:43, 12:40-13:7, 14:58-15:6, 15:36-49, 20:45-21:9; '145 at 2:35-39, 5:4-15, 8:51-53, 9:60-10:17, 12:54-67, 13:38-43, 14:42-55.

The claims include numerous improvements over prior manual process, beyond the mere use of a computer. For example, manual marking of the eye does not involve the use or display of a pre-operative image during the astigmatism procedure, nor is there any calculation of a rotational displacement or registration of the pre-operative image with a real-time image. Instead, before the invention, doctors attempted to use manual, physical markings on the eye during the surgery for alignment. *See, e.g.*, '948 at 1:25-2:37; 12:40-13:7. Thus, the patented inventions introduce the use of new data collection and analysis over the prior-art manual methods. *See, e.g.*, '948 at 20:45-21:9; 12:45-50. Moreover, J&J's own statements quoted in the Complaint confirm that the accused features were groundbreaking advances over prior manual methods. Compl., ¶¶14, 15, 36, 38; *see also* Exs. 1-7.

17

Finally, J&J relies on other cases that are distinguishable. J&J cites *CardioNet, LLC v. InfoBionic, Inc.*, 816 F. App'x 471 (Fed. Cir. 2020) ("*CardioNet II*") and *CardioNet, LLC v. InfoBionic, Inc.*, 2021 WL 5024388, at \*2 (Fed. Cir. Oct. 29, 2021) ("*CardioNet III*"). The complaints in *CardioNet II* and *III*, unlike here, lacked sufficient allegations regarding the claimed technological improvement and innovative concepts. 816 F. App'x 475-76; 2021 WL 5024388, at \*3-4. Likewise, the written descriptions failed to recite any advantages. *Id*. The facts here are more similar to *CardioNet I*, where the Federal Circuit upheld claims that "focus on a specific means or method that improves" on the prior art, as confirmed by several statements in the written description. 955 F.3d at 1368. Important to the court's determination in *CardioNet I* was the fact that the "written description identifies a number of advantages gained by the elements recited in the [claim]." *Id.* at 1369. The '948 and '145 Patents likewise explain several advantages tied to the claimed inventions that J&J has not challenged. '948 at 2:41-45, 2:61-3:43, 12:64-13:7, 20:45-21:9; '145 at 5:4-15, 12:54-67, 14:42-55.

J&J's reliance on *Align Technology, Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435 (D. Del. 2018) is also misplaced. J&J relies solely on the court's analysis of the '065 patent, but the Asserted Patents are more similar to the '873 patent, which the court found was ***not*** directed to a patent ineligible abstract idea but instead an "improved method for generating a model of an intraoral site." *Id.* at 450. By contrast, the '065

18

patent J&J relies on was determined to be directed to an abstract idea because "the claim recites nothing more than the procedure by which dentists and technicians previously" conducted. *Id.* 452. As explained above with respect to *University of Florida*, that is not the case here. The patents' written descriptions and the allegations in the Complaint explain how the claimed inventions provide solutions that are distinct from prior manual methods. *Cf. id.* at 452. Like 3Shape's '873 Patent, the claims here are directed to an improvement over the prior art and consequently patent eligible.

### B. *Alice* Step Two.

Although the Court should reject J&J's oversimplification of the claims and deny J&J's motion at step one of the *Alice* analysis, step two provides additional and straightforward reasons why the motion must be denied. Even if a claim is directed to an "abstract idea," it is nonetheless patent eligible unless the defendant can show by clear and convincing evidence that all claim elements and the overall combination of elements are merely "well-understood, routine and conventional." *Berkheimer*, 881 F.3d at 1368-69. This determination is a question of fact, *id*., and one that is plainly in dispute in light of the allegations in the Complaint.

As explained above, *supra* Sections III & V.A.2, the specifications and the Complaint assert that the inventions disclosed and claimed are specific improvements over the prior art, achieved previously unobtainable advantages and

results, and are not merely "well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1368-70.   Even if J&J's brief had disputed any of these statements—which it does not—at this early stage the Court must accept these statements as true. *Sound View Innovation, LLC v. Delta Air Lines, Inc.,* 2020 WL 1667239, at \*2 (D. Del. Apr. 03, 2020) ("I need not and do not decide whether the asserted patents are directed to abstract ideas because statements in the specifications of the asserted patents that are alleged or incorporated by reference in the complaints plausibly establish that the asserted claims contain an inventive concept.").

At a minimum, *Alice* step two raises factual disputes regarding the unconventional and inventive nature of the claimed combinations that cannot be resolved on a motion to dismiss.  In *Aatrix*, for example, the Federal Circuit held that "numerous allegations related to []inventive concepts" when "[v]iewed in favor of Aatrix, as the district court must at the Rule 12(b)(6) stage," were sufficient to overcome the assertion that "the claimed combination was conventional or routine." 882 F.3d at 1127-28.  The statements relied on in *Aatrix*, as in the present case, "describe[d] the development of the patented invention, including the problems present in the prior art," "'improvements and problems solved by the Aatrix patented inventions,'" and several benefits and advantages gained by the claimed inventions. *Id*.; *see also Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306, 1317-18 (Fed. Cir. 2019) (reversing dismissal because "specific, plausible factual allegations" established

20

"why aspects of [the] claimed inventions were not conventional"). It is premature to decide any factual issues that are a necessary part of the *Alice* step two analysis.

## VI.    CONCLUSION

For the foregoing reasons, Alcon respectfully requests that the Court deny J&J's Motion to Dismiss in its entirety.

Respectfully submitted,

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs*

OF COUNSEL:
Jeanne M. Heffernan
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9123

Gregg F. LoCascio
Sean M. McEldowney
Noah S. Frank
Hannah L. Bedard
Socrates Boutsikaris
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000

Caroline Lourgos
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Joshua L. Simmons
Matthew A. Lembo
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Kristen P.L. Reichenbach
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Dated: March 25, 2022

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's November 6, 2019 Standing Order, I hereby confirm that this brief complies with the type and number limitations set forth in the Standing Order. I certify that this document contains 4,759 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count does not include the cover page, tables, or the counsel blocks.

<div style="margin-left:40%">

*/s/ Nathan R. Hoeschen*

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs*

</div>